improved and the patentee of the thing improved may not use the patented improvement. On the question, whether the defendants can be deemed inventors at all of what they deem an improvement, I express no opinion.

A decree must be entered for the plaintiffs, for an account, and for an injunction as prayed, with costs.

[NOTE. Patent No. 48,036 has not been involved in any other cases reported prior to 1880.]

## Case No. 533.

### In re ARLEDGE.

[1 N. B. R. (1873,) 644, (Quarto, 195.)]

District Court, S. D. Georgia.

BANKRUPTCY—THE ASSIGNEE—PRIOR ASSIGNMENT FOR BENEFIT OF CREDITORS.

[An assignment for benefit of creditors, without fraud, of all a man's property, a year before his petition in bankruptcy, is valid as against the assignee in bankruptcy, who takes only such rights as the bankrupt had at the time of his bankruptcy.]

[See Mayer v. Hellman, 91 U. S. 496; In re Kimball, Case No. 7,770.]

[In bankruptcy. Certificate to district court by register of question arising before him. Affirmed.]

I, the undersigned, having been designated by the court as the register in bankruptcy before whom the proceedings, in the above matter of the bankruptcy of George H. Arledge are to be had, do hereby certify, that in the due course of such proceedings the following question pertinent to the same arose, and was stated by Peter V. Robinson, assignee of the effects of the said bankrupt, namely: The said George H. Arledge, some twelve months prior to his filing his petition in bankruptcy, conveyed by deed of assignments, for the benefit of all his creditors, all his stock in trade, choses in action, books of account and property of every kind to one John H. Thomas; from the proceeds of the sale of said property a dividend of ten per cent. has been paid by the said Thomas, a balance of money, and the books of account, still remain in his hand. Is the said assignee in bankruptcy entitled to receive from the said John H. Thomas the money and property not yet distributed among the creditors? And the said party requested that the same should be certified to your honor for your opinion thereon. Frank S. Hesseltine, Register in Bankruptcy for Said District.

Opinion of the Register. It is my opinion that the assignee is not entitled to recover the said money and books of account in the hands of the said John H. Thomas. The deed of assignment conveys to the assignee "all the estate, real and personal, of the bankrupt, with all his deeds, books, and papers relating thereto, and such assignment shall relate back to the commencement of said proceedings in bankruptcy." Bankrupt Act, § 14, (Rice's Manual, general clause 46). By this clause of the bankrupt act it appears that all the property of the bankrupt—the title and right to which was in the bankrupt at the time of filing his petition—and that only, passes to the assignee. Property which previous to that time had been lawfully conveyed or assigned to any person by the bankrupt does not pass to the assignee, the title having gone out of the bankrupt and become vested in the person to whom it was conveyed or assigned. The assignee acquires by the deed of assignment the like right, title, power, and authority to sell, manage, dispose of, sue for, and recover or defend the property or estate as the bankrupt might or could have had if no assignment had been made. Bankrupt Act, § 14, (Rice's Manual, general clause 52.)

By section 35 of the act a conveyance or assignment, made by a person being insolvent within four months before the filing of the petition by, or against him, of any part of his property, a person having reasonable cause to believe such a person insolvent, with a view to give a preference to any creditor; or a like conveyance within six months before the filing of the petition, with a view to prevent the property from coming to his assignee in bankruptcy, or to defeat the object of, or in any way impair, or delay the operation of this act, &c., are void, and the assignee may recover the property, or the value of it. This section does not apply to this assignment, made more than twelve months before the filing of his petition by the bankrupt, and made for the benefit of all his creditors. In the case of Mitchell v. Winslow, [Case No. 9,673,] Justice Story says: "that it is a well established doctrine that (except in cases of fraud) assignees in bankruptcy take only such rights and interests as the bankrupt himself had, and could himself claim and assert at the time of his bankruptcy."

Lord Hardwicke, in the case of Brown v. Heathcote, 1 Atk. 160–162: "The ground that the court go upon is this, that assignees of bankrupts, though they are trustees for the creditors, yet stand in the place of the bankrupt, and they can take in no better manner than he could; therefore assignments of choses in action for a valuable consideration have been held good against such assignees." In the case of Mitford v. Mitford, 9 Ves. 87, 100, Sir William Grant said: "I have always understood the assignments from the commissioners, like any other assignments by operation of law, passed his (the bankrupt's) rights precisely in the same plight and condition as he passed them." See, also, Bedford v. Perkins, 3 Car. & P. 90; [Fisher v. Miller,] 1 Bing. 150; [Young v. Taylor,] 2 Moore, 336; [Crowfoot v. Gurney,] 9 Bing. 372. The said Arledge's right and interest in this property claimed by the assignee,

ceased on the execution of the deed of assignment to Thomas, subject to the condition that if, after the payment in full of the creditors, there should be a balance in his hands, that remainder would be the property of Arledge, and the right to receive that remainder is all the right his assignees in bankruptcy acquired by the deed of the register. That is the reason why the forms of proceedings in bankruptcy adopted by the supreme court of the United States require that property previously conveyed should be set forth under the heads of Property in Reversion, Remainder and Expectancy, Schedule B, 4. There has been no claim proved against this bankrupt, and he has petitioned for his discharge.

Frank S. Hesseltine, Register.

ERSKINE, District Judge. The decision of the register is affirmed. The clerk will certify accordingly.

ARLEDGE, (BOYLE v.) See Case No. 1,758.

ARLETH, (WHITE v.) See Case No. 17,536.

# Case No. 534.

## The ARLINGTON.

[2 Ben. 511.][1]

District Court, S. D. New York. Oct., 1868.

SALVAGE—TOWAGE—TENDER—COSTS.

1. Where a libel, claiming $1,000 as salvage, for service rendered by a steam-tug in towing a schooner away from a slip where there was a fire, was filed by the owner of the tug, who was not personally present when the service was rendered: Held, that the case was not one of salvage, but that the libellant was entitled to reasonable compensation for the use of his vessel.

[See note at end of case.]

2. It appearing that the service occupied but two or three hours, that another vessel was towed out at the same time, that the steam-tug was not diverted from any other occupation, that her usual compensation was from $10 to $15 an hour, and that the master of the schooner had refused to pay more than $50: Held, that that sum was sufficient, and that the libellants should recover that sum without costs. That, if the $50 had been tendered or brought into court the court would have awarded costs to the claimants.

In admiralty.

W. J. Haskett, for libellant.

R. H. Huntley, for claimants.

BLATCHFORD, District Judge. This is a libel filed by the owner of the steamboat Thomas Kiley, against the schooner Arlington, claiming $1,000 for salvage, by reason of services rendered to the schooner, by the steamboat, on the 20th of August, 1866, in towing her from a slip in Jersey City, New Jersey, into the Hudson river, during a fire which was burning on shore. The libellant was not on board of the steamboat at the time, and did not personally render any of the services. The case, therefore, is not one of salvage. The Charlotte, 3 W. Rob. Adm. 68, 72; The Jack Jewett, [Case No. 7,-122.] But the libellant is entitled to an equitable compensation for the use of his steamboat in towing the schooner. On the evidence, the libel grossly exaggerates the danger both to the schooner and to the steamboat at the time the service was performed. It avers that the master and owner of the schooner refused to pay more than the sum of $50 for the service, and that that sum is too trifling. I think it is sufficient. The service did not occupy more than from two to three hours, another vessel was towed out by the steamboat at the same time, and the steamboat was not diverted from any other occupation to render the service, as she voluntarily went to the spot to render such service as she could, and was engaged by the other vessel, before referred to, prior to the time when the schooner applied to her. The evidence is that the steamboat usually received from ten to fifteen dollars an hour for towing. A decree will be entered for $50, but without costs to the libellants. If the claimants had shown a tender of the $50, or had brought that amount into court, I should have awarded costs to them.

[NOTE. For cases in which aid or assistance in extinguishing a fire on shipboard has been held to be a salvage service, see "The Connemara, 108 U. S. 352, 2 Sup. Ct. 754; Murphy v. The Suliote, 5 Fed. 99; The Cloud, 29 Fed. 272. The owners of a steamboat are entitled to a reasonable compensation for towage in towing a burning vessel from one shore of a river to the other; but they are not, for that service alone, entitled to salvage. Emerson v. The Pandora, Case No. 4,442. So, also, was it held that a tug assisting in extricating a burning vessel was only entitled to compensation for the towage. The Cyclone, 16 Fed. 486. But a tug which had brought up to a pier, within reach of the fire department, a burning barge, was held entitled to salvage, but not as upon derelict property. Corwin v. The Jonathan Chase, 2 Fed. 268. A steamship and cargo valued at $433,-000 were towed into the stream from a pier on which a fire was spreading rapidly. The service occupied about an hour, and the steamship was entirely unharmed. There were other tugs near, which might have performed the service. Each tug was awarded $2,000 as salvage. The New York, 34 Fed. 922. A steamship and cargo valued at $600,000 requested a tug to tow her away from a burning slip. Two others assisted, and in about two hours the steamship was moved out of danger. The steamer could have been warped across the slip by her donkey engines, which had steam up. Salvage to the amount of $4,500 was awarded the three tugs, in proportion to their relative merits. Baltimore & O. R. Co. v. The Holland, 44 Fed. 362.]

ARLINGTON CASE. See Cases Nos. 8,191 and 8,192.

ARLINGTON, Town of. (FIRST NAT. BANK OF NORTH BENNINGTON v.) See Case No. 4,806.

[1][Reported by Robert D. Benedict, Esq., and here reprinted by permission.]